**IN THE UNITED STATES EASTERN DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THEODORE HAYES and AQEELA FOGLE | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 15-2617 |
| | : | |
| PHILIP E. HARVEY | : | |
| | : | |
| Defendant. | : | |

## O R D E R

AND NOW, this _____ day of _____, 2015, upon consideration of

the Defendant Philip E. Harvey's Motion for Summary Judgment, and Plaintiff's response

thereto, if any, it is hereby ORDERED that Defendant's Motion is GRANTED and Plaintiff's

Complaint For Declaratory and Injunctive Relief is hereby DISMISSED against Defendant

Harvey with prejudice.


BY THE COURT:


_____

NITZA I. QUINONES                    J.

**IN THE UNITED STATES EASTERN DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THEODORE HAYES and AQEELA FOGLE | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 15-2617 |
| | : | |
| PHILIP E. HARVEY | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT PHILIP E. HARVEY'S
MOTION FOR SUMMARY JUDGMENT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 56**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, Philip Harvey,

respectfully requests that this Honorable Court enter summary judgment in favor of Defendant

Harvey and dismiss with prejudice Plaintiffs' Complaint for Declarative and Injunctive Relieve

as there are no issues as to any material fact.  In support of this motion, Defendant Harvey

incorporates herein by reference his memorandum of law and any supporting documents as if set

forth at length.

Respectfully submitted,

KOLBER & RANDAZZO, PC

Susanna Randazzo, Esquire
Attorney I.D. #79116
Attorney for Defendant Philip Harvey
One South Broad Street
Suite 1610
Philadelphia, PA 19107
(215) 567-1333
Fax (215) 567-2099
srandazzo@krpc-law.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

TABLE OF EXHIBITS ........................................................................................................... iv

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................................. 2

III. STANDARD OF REVIEW................................................................................................5

III. LEGAL ARGUMENT   ..................................................................................................... 6

A. Statutory Background ..........................................................................................................6
B. Historical Background of 536 - 540 Pine Street ..................................................................9
C. Defendant Harvey's property located at 536 Pine Street, Apt B is Not A Project Based Unit
    and Thus the Right to Remain is Not Applicable..................................................................10
D. Good Cause, Which is Not Required in The Case At Hand, Exists for the Eviction of the
    Hayes Family ......................................................................................................................16
E. The Granting of Plaintiffs' Preliminary Injunction is a Violation of the Fifth and Tenth
    Amendment of the Constitution............................................................................................18

IV. PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM IF THEY ARE  EVICTED..20

V. GRANTING THE RELIEF WILL RESULT IN EVEN GREATER HARM TO
   DEFENDANT......................................................................................................................21

VI. THERE IS NO PUBLIC INTEREST IN GRANTING PLAINTIFF'S REQUESTED
    RELIEF...............................................................................................................................21

VII. CONCLUSION ..............................................................................................................22

## Cases

*Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir. 1997) ....................................................5

*Caldwell v. Wilson Freight Forwarding Co.,* 332 F.Supp. 43 (W.D. Pa 1971).......................5

*Gold Fuel Serv. v. Esso Standard Oil Co.*, 195 F.Supp. 85 (D. N.J. 1961) *aff'd* 306 F.2d. 61 (3d. Cir. 1962) *cert. denied* 371 U.S. 951, (1963).............................................................................5

*Tobelman v. Missouri-Kansas Pipe Line Co.,* 130 F. 2d. 1016, 1018 (3d. Cir. 1942)..............5

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)......5

*Octavia Hill Association, Inc. v. Hayes*, Nos. 73-1599 (E.D. Pa. Oct. 16, 1973).....................9

*Dodson v. Salvitti*, No. 74-1854 (E.D.P.A. 1977), *aff'd mem.* 571 F. 2d 571 (3d Cir.), *cert denied,* 439 U.S. 883 (1978)............................................................................................................9

*Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045 (3d Cir. 1980)). .........................................9

*Park Village Apts. et al. v. Mortimer Howard Trust*, 2007 U.S. Dist. LEXIS 14516..............13

*Feemster v. BSA Ltd*, 548 F. 3d 1063 (D.C. Cir. 2008), *aff'g in relevant part*, 471 F. Supp, 2d 87 (D.D.C. 2007)..............................................................................................................................13

*Barrientos v. 1801-1825 Morton, LLC*, No.: 06-6437, 2007 WL 7213974 (C.D. Cal. Sept. 11, 2007, *aff'd on other grounds*, 583 F.3d 1197 (9th Cir. 2009) ....................................................14

*Estevez v. Cosmopolitan Assoc., LLC*, No.: 05-4318, 2005 WL 3164146 (E.D.N.Y Nov. 28, 2005).............................................................................................................................................14

*Jeanty v. Shore Terrace Realty Ass'n*, No. 03-8669, 2004 WL 1794496 (S.D.N.Y. Aug. 10, 2004).............................................................................................................................................14

*In People to End Homelessness, Inc. v. Develco Singles Apartment Associates*, 339 F. 3d 1 (1st Cir. 2003) ...................................................................................................................................14

*Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 127 (1978)..................................18

*Lingle v. Chevron U.S.A., Inc.* 544 U.S. 528, 538 (2005) (*citing Loretto v. Teleprompter Manhattan CATV Corp.*, 558 U.S. 419 (1982)........................................................................19

*Kelo v. City of New London, Connecticut*, 545 U.S. 469, 477 (2005) ....................................19

*U.S. v. Fox*, 94 U.S. 315, 320 (1877)......................................................................................20

**Statutes**

42 U.S.C. §1437f(o)(1)(B), 42 U.S.C. §1437f(o)(2)(A)-(B)...............................6, 7, 8, 9,11, 15

24 C.F.R. §221.524 (a)(ii)(197).................................................................................7

113 Stat. 1047, 1113 (1999), Pub. L. No.: 106-74, §531(d)(1). ........................................7, 8

24 C.F.R. §982.310 (d)(1)........................................................................................17

## **TABLE OF EXHIBITS**

(Ehibits A through and including Q: Defendant incorporates Plaintiffs Exhibits)

Exhibit R:      Title Insurance

Exhibit S:      HAP Contract

Exhibit T:      HUD, Housing Choice Voucher Fact Sheet

## IN THE UNITED STATES EASTERN DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEODORE HAYES and AQEELA FOGLE | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 15-2617 |
| | : | |
| PHILIP E. HARVEY | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PHILIP E. HARVEY'S MOTION FOR
## SUMMARY JUDGMENT

Defendant, Philip Harvey, (hereinafter "Defendant Harvey"), by and through his attorney, Susanna Randazzo, Esquire, hereby requests that this Honorable Court enter an Order granting his Motion for Summary Judgment dismissing with prejudice Plaintiffs, Theodore Hayes and Aqeela Fogle's (hereinafter collectively referred to as "Plaintiffs" and/or "Hayes Family") Complaint against Defendant Harvey on the grounds that there is no genuine issue as to any material fact, and in support thereof avers the following:

## I.     INTRODUCTION:

Defendant Philip E. Harvey is the rightful owner of the property located at 538 Pine Street, Apt. B, Philadelphia, PA (hereinafter "the premises"). Defendant Harvey and Florence Hayes, deceased mother of Theodore R. Hayes, entered into a one year lease for the premises commencing on May 11, 2010. The lease automatically renewed for two year terms thereafter and the final lease term ended on April 30, 2015. (See Exhibit "A", paragraph 11 to Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts).

1

On February 17, 2015 and May 1, 2015 Defendant Harvey served the Hayes Family with notices of non-renewal of the lease agreement which was set to expire on April 30, 2015.

The proposed eviction of the Hayes Family is based on Pennsylvania law and the Housing Assistance Contract (HAP Contract) entered into between Defendant Harvey and the local Philadelphia Housing Authority (PHA) which permit the eviction of a tenant upon the termination of the lease.  In the alternative, if this Honorable Courts finds that good cause is required for the eviction of the Hayes family, which is specifically denied by Defendant Harvey, good cause was provided to Hayes Family as grounds for the eviction.

As discussed *infra*, Plaintiffs' Complaint for Preliminary Injunction is without legal basis as the Hayes Family has no right to remain in the premises and the proposed eviction of the Hayes Family is legal and just.

II.     **STATEMENT OF UNDISPUTED FACTS**

The following is a supplement to Plaintiffs' Statement of Undisputed Facts.

1.      Plaintiff Theodore Hayes moved into 538 B Pine Street with his mother, Florence Hayes, in February, 1982. Sometime in either 1985 or 1987 he moved out of 538 B Pine Street and moved in with is former girlfriend at 23rd & Ellsworth. He lived at 23rd & Ellsworth for ten years.  (Exhibit B, pg 10, lines 1-24; pg. 11, lines 1-7).

2.      After moving out of 23rd & Ellsworth, Mr. Hayes moved into his own apartment in New Jersey where he lived for 2-3 years. (Exhibit B, pg. 11, lines 11-22 and pg 12, line 1).

3.      ***Mr. Hayes did not reside at 536 B Pine Street for over 16 - 18 years***. (Exhibit B, pg 13, Lines 20-23, emphasis added).  He moved back to 536 B Pine Street in 2003. (Exhibit B, lines 1-11).

2

4.      The combined annual household income for the Hayes Family is $48,096. (Exhibit B, pg. 32, lines 10 – 13; and Exhibit C, pg. 12, line 4).  In addition, Aqeela Fogle receives $11,428 yearly in child support for her three children.  (Exhibit C, pg. 21, lines 1 – 12).

5.      Aqeela Fogle moved into 538 Pine Street when she was in kindergarten. (Exhibit C, pg. 8, line 6).  Ms. Fogle was born in September, 1982 (Exhibit C, pg. 7, line 23) and kindergarten entrance age is 5.  She did not originally reside at the property when Florence Hayes moved in in 1982.

6.      Aqeela Fogle has three children:  Raanee, age 14, Dhameer, age 10, and James, age 7.  (Exhibit C, pg. 9, lines 6 - 7).

7.      Dhameer, resides with his father every weekend in South Philadelphia.  (Exhibit C, pg. 22, lines 9 – 19).

8.      James, resides with his father from Thursday to Friday every week and Friday to Sunday three weekends of the month. Address is unknown. (Exhibit C, pg. 23, lines 1 – 17).

9.      Raanee often visits and stays with her maternal grandmother who owns her own four bedroom home in the Logan section of Philadelphia.  (Exhibit C, pg. 15, lines 12 - 24, pg. 16, lines 1 - 16).

10.     Plaintiff Theodore Hayes never had a conversation with Defendant Harvey or his daughter Allison Harvey regarding an enhanced voucher. (Exhibit B, pg. 80, lines 18-22).

11.     After receiving the notice of eviction from Defendant Harvey Plaintiffs received a voucher from PHA providing them with 120 days to find another residence.  (Exhibit B, pg. 89, lines 6- 13).

12.     When Plaintiffs were provided the voucher from PHA they were given a list of

over 100 units available for move in.  (Exhibit B, pg. 93, line 7).  The list was over 3- 5 pages and it listed addresses and bedroom sizes of rental properties available through the Section 8 Program (Exhibit B, pg. 94, lines 9 -13).

13.    South Philadelphia is an acceptable neighborhood for Plaintiffs to move into. (Exhibit B, pg. 96, lines 20 – 24, and pg. 97, lines1 – 4).

14.    Defendant Harvey purchased the property consisting of three duplexes located at 536-540 Pine Street in August, 2010.  The property was purchased at market rate in fee simple for $1,215,000.00.  (See Deed, Exhibit H). The property was purchased free and clear of any impediments, encumbrances, liens and/or restrictions. More specifically, the deed has no restrictions on the residential rental use of the premises. (Exhibit H).

15.    The Title Insurance search (Exhibit "R") specifically provides that the property is not encumbered and purchased without a mortgage.

16.    On the same date of the Lease Agreement (Exhibit I), Defendant Harvey entered into a HAP Contract with the local housing authority, Philadelphia Housing Authority.  (See Exhibit "S", Housing Assistance Contract (HAP Contract, Parts A - C). The HAP Contract specifically provides:

> "This form of Housing Assistance Payment Contract (HAP contract) is
> used to provide Section 8 tenant-based assistance under the housing
> choice *voucher program (voucher program)* of the U.S. Department of
> Housing and Urban Development (HUD). *The main regulation for this
> program is 24 Code of Federal Regulation Part 982.*

(Exhibit "S", emphasis added).

17.    The HAP Contract refers specifically to the Section 8 voucher program which is governed by 24 Code of Federal Regulations and the United States Housing Act of 1937, 42

4

U.S.C. §1437o and not the Enhanced Voucher as regulated by the United States Housing Act of 1937, 42 U.S.C. §1437f(t).

### III.     STANDARD OF REVIEW:

Summary judgment pursuant to FRCP 56, may be entered "...if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir. 1997). Summary judgment should only be granted where no factual or legal issues exist. *Caldwell v. Wilson Freight Forwarding Co.*, 332 F.Supp. 43 (W.D. Pa 1971) and *Gold Fuel Serv. v. Esso Standard Oil Co.*, 195 F.Supp. 85 (D. N.J. 1961) *aff'd* 306 F.2d. 61 (3d. Cir. 1962) *cert. denied* 371 U.S. 951, (1963).

All doubts as to the existence of a genuine issue of a material fact must be resolved in the favor of the non-moving party. *Tobelman v. Missouri-Kansas Pipe Line Co.,* 130 F. 2d. 1016, 1018 (3d. Cir. 1942). A material fact is one which will affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d. 202 (1986). However, if the evidence of the non-moving party is merely colorable, or if it is not significantly probative, summary judgment may be granted. Id.

For the following reasons, there exist no genuine issue of material fact and this action should be decided as a matter of law.

## IV.   LEGAL ARGUMENT

### A.   Statutory Background

The Housing Choice Voucher Program (HCV), formerly known as Section 8, is a federally funded program which is administered by the local housing authorities. The program provides subsidized rental assistance to *very low-income* and disabled families to afford housing in the private market. (See, Exhibit "T", HUD.gov, Housing Choice Voucher Fact Sheet, emphasis added).

HCV may be either "project-based" or "tenant based." 24 C.F.R. §982.1(b)(1).  Project based assistance is tied to the individual units where as tenant based assistance is associated with the tenant and moves along with the tenant when he or she moves to another HCV unit.  Under the tenant based voucher program HUD enters into a HAP contract with private owners for individual units after the tenant has selected their unit of choice.  Tenant based vouchers are portable meaning that the tenant may choose to live in any property where an owner agrees to enter into a HAP contract.  42 U.S.C. §1437f(o)(1)(B), 42 U.S.C. §1437f(o)(2)(A)-(B). A family that is issued a housing voucher is responsible for finding a suitable housing unit of the family's choice where the owner agrees to rent under the program.  (Exhibit T, HUD Housing Choice Voucher Fact Sheet).

Under the voucher program, the contract entered into between the landlord-owner and the local housing authority:

> "shall provide *that during the term[1] of the lease*, the owner shall not terminate

_____

[1] It is implicit that as in all landlord-tenant relationships, the lease terminates upon the termination of the term and that the landlord is entitled to evict pursuant to Pennsylvania and local laws.

6

> the tenancy except for serious repeated violations of the terms and conditions
> of the lease, for violations of applicable Federal, State or local law, or for
> other good cause, and in the case of an owner who is an immediate successor
> in interest pursuant to foreclosure during the term of the lease vacating the
> property prior to sale shall not constitute other good cause..."

42 U.S.C. 1437o(7)(C), emphasis added.

It is undisputed that Plaintiffs received a tenant based assistance voucher in the case at hand. Although project based assistance is not applicable to the case at hand, Defendant provides the procedural history by way of background only.

In the 1960's, Congress sought to entice landowners to build affordable project based rental housing for low-income and disabled tenants by subsidizing and insuring mortgage loans for the construction of multifamily housing. See Housing & Urban Development Act of 1968, 82 Stat. 476, 498-503 (1968), Pub. L. No. 90-448, §§ 201 (a), 236 (a)-(g). Under this program, HUD entered into contracts with private homeowners to insure and subsidize the interest payments of the mortgages held by the owners. In the late 1980's many of these owners became eligible to prepay mortgages, thus terminated their contracts with HUD and opted out of the project based program 24 C.F.R. §221.524 (a)(ii)(197).

In order to protect tenants residing in assisted units when owners sought to "opt out", Congress enacted a notice requirement requiring the owner to provide the tenant and HUD with written notice "not less than one year before the [proposed] termination." 42 U.S.C. §1437f(c)(8)(A).

As numerous project based contracts began to expire in the late 1990's, Congress authorized HUD to issue "enhanced vouchers." See 113 Stat. 1047, 1113 (1999), Pub. L. No.:

106-74, §531(d)(1). Under the enhanced voucher program, ***if an owner[2] opts out of the project based contract***, HUD is authorized to issue "enhanced" vouchers to tenants who are residing in the project at the date of the contract expiration.  42 U.S.C. §1437f(t).

On July 13, 2000, Congress amended subsection (t) to provide that the "assisted family ***may elect to remain*** in the same project" at the time of the contract termination or housing conversion.  114 Stat. 569 (2000), Pub. L. No. 106-246 §2801, emphasis added.  In conjunction with the amendment, HUD issued a publication that provided guidance to tenants regarding their rights to remain in their homes when landlords decide to exercise their opt-out prerogative.  The HUD Policy Guide provides that ***owners who have decided to opt-out of the project based Section 8 program*** to certify that they "will comply with the requirements to allow families receiving enhanced vouchers who elect to remain to do so as long as the property remains a rental property, unless the owner has just cause for eviction."  (See Exhibit P, Section 8 Renewal Policy Guide, page 5-6). The opt out owner his required to certify that they agree to honor the tenants' right to remain at the property. Id. at pg. 6. "If an owner refuses to honor the tenants right to remain, the tenant's remedy will depend on State and local law."  Id at pg. 3, Section 11-3 B 1.

Moreover, HUD policy mandates that "housing choice voucher program rules, regulations, and requirements apply to special admission vouchers made available for families as the result of Housing conversion actions" such as enhanced vouchers. (See PIH PIH 2001-41).

---

[2] By Plaintiffs' own admission, Defendant Harvey is not the owner who "opted out." Plaintiffs admit, although Defendant has no independent knowledge, that the premises was originally a project based unit and that the prior owner, Pine Street Associates, who received the federally subsidized mortgage opted out in 2008.

8

In other words, although the federal code created the enhanced voucher, 42 U.S.C. §1437f(t), the federal regulations are used to administer the program.

**B.     Historical Background of 536 - 540 Pine Street**

The only evidence submitted by Plaintiffs, the truth of which is neither admitted nor denied by Defendant Harvey as Defendant has no knowledge of the remote history of the property, is that the previous owner of the property utilized federal project-based section 8 subsidies to build the property in approximately 1982.

Plaintiffs' current counsel, Community Legal Services (CLS), represented Ms. Florence Hayes, among other tenants, in several of the lawsuits filed in the '70's and '80s.  (See, *Octavia Hill Association, Inc. v. Hayes*, Nos. 73-1599 (E.D. Pa. Oct. 16, 1973); *Dodson v. Salvitti*, No. 74-1854 (E.D.P.A. 1977), *aff'd mem.* 571 F. 2d 571 (3d Cir.), *cert denied*, 439 U.S. 883 (1978); and *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045 (3d Cir. 1980)).

CLS and the Hayes family are very well aware that the parties entered into a consent decree as a result of the <u>*Dodson v. Salvitti*</u> litigation.  The consent decree[3] was a point of contention in the *Society Hill Civic Ass'n v. Harris* lawsuit in which the Society Hill Civic Association argued that the decree violated several constitutional and federal statutes. Specifically, the Association claimed, as summarized by the 3rd Circuit, that:

> "***the consent decree's twenty year limitation on the new housing for use by tenants*** of low and moderate income is in violation of 24 C.F.R. §880.109(a) (1979), which limits federal housing assistance payments contracts to initial terms of no more than five years, renewable at the sole option of the owner of the housing."

---

[3] Defendant is not privy to a copy of the Dodson Consent Decree and was informed that CLS is unable to locate their copy.

*Id at* 1059 (emphasis added).

Accordingly both CLS and the Hayes family are very well aware that there was a 20 year limitation on the use of the new housing (ie. 536-540 Pine Street) by the tenants. The Hayes family moved into the 538 B Pine Street property in 1982, which is 13 years longer than the Hayes family envisioned when entering into the Dodson Consent Decree.

### C.    Defendant Harvey's property located at 536 Pine Street, Apt B is Not A Project Based Unit and Thus the Right to Remain is Not Applicable.

It is undisputed that:

- at no time did Defendant Harvey enter into a project based Section 8 assistance contract with HUD;

- at no time did Defendant Harvey obtain a subsidized or federally insured mortgage from HUD;

- the Hayes Family's prior landlord who had allegedly entered into a project based Section 8 Contract with HUD was the only landlord owner who was required to issue the one year opt out notice letter and certify that he/she would honor the tenant's right to remain; and

- at no time did Defendant Hayes certify to the Hayes Family that he would honor their right to remain. Not only did Defendant Hayes never make such a certification, he was also not required to issue such a certification as he was never subject to a project based Section 8 Contract.

There simply is no evidence and/or law relied upon by Plaintiffs, as none exists, to support Plaintiffs allegation that a new owner of the premises who NEVER entered into any projected based Section 8 contract with HUD nor utilized ANY federal funds to purchase the property is bound by the Enhanced Voucher regulations. By Plaintiffs own admission the "*United States Housing Act protects low-income tenants whose property owners chose to prepay or opt out.*" (emphasis added). In the case at hand, Defendant Harvey never accepted federal

funding to purchase the property and as such was not required to issue the requisite one year opt

out letter to the Hayes Family.  42 U.S.C. §1437(c)(8)(A).  Instead, the prior owner of

Washington Square East was required to, and did, issue an opt out letter to the Hayes Family in

2008.  Based on the law, the Hayes *at that time* exercised their right to remain at the property and

that right to remain thereafter expired.

  Although Defendant Harvey admits upon information and belief that Plaintiffs are

receiving an enhanced voucher, at no time did Defendant Harvey enter into an enhanced voucher

contract with the local housing authority.  The only contract entered into by Defendant Harvey is

the HAP Contract with the local housing authority, PHA.  The HAP Contract provides:

> "This form of Housing Assistance Payment Contract (HAP contract) is
> used to provide Section 8 tenant-based assistance under the housing
> choice ***voucher program (voucher program)*** of the U.S. Department of
> Housing and Urban Development (HUD). *The main regulation for this
> program is 24 Code of Federal Regulation Part 982*.

(Exhibit "S", emphasis added).

  The HAP Contract (Exhibit "S") specifically provides that the tenant is receiving Section

8 tenant based assistance under the ***voucher program***, not the enhanced voucher program.  The

contract specifically states that the program is regulated pursuant to 24 Code of Federal

Regulation Part 982 which governs a regular voucher.  Of greater significance is that no where in

the contract entered into between Defendant Harvey and the local housing authority does it

mention that the Hayes Family has a right to remain in the unit.  To the contrary, the contract

specifically provides:

> "4.  **Term of HAP Contract**
>
>   a.  Relation to lease term.  The term of the HAP contract begins

on the first day of the initial term of the lease, ***and terminates on the last day of the term of the lease*** (including the initial lease term and any extensions)."

(See Exhibit "S", HAP Contract, Part B, Section 4a, pg. 3 of 10).

Moreover, Part C of the HAP Contract: Tenancy Addendum, states:

"1.     **Section 8 Voucher Program**

a.     The owner is leasing the contract unit to the tenant for

occupancy by the tenant's family with assistance for a tenancy under the Section 8 housing choice voucher program (voucher program) of the United States Department of Housing and Urban Development (HUD).

(See Exhibit "S", HAP Contract, Part C, Section 1a, pg. 8 of 10).

"3.     **Use of Contract Unit**

a.     *During the lease term*, the family will reside in the contract unit with assistance under the voucher program."

(See Exhibit "S", HAP Contract, Part C, Section 3a, pg. 8 of 10).

"8.     **Termination of Tenancy by Owner**

a.     Requirements: The owner may only ***terminate the tenancy*** in accordance with the lease and HUD requirements.

b.     Grounds. ***During the term of the lease (the initial term of the lease or any extension term)***, the owner may only terminate the tenancy because of:

(1) Serious or repeated violations of the lease;

(2) Violation of Federal, State or local law that imposes obligations on the tenant in connection with the occupancy or use of the unit and the premises;
(3) Criminal activity or alcohol abuse;
(4) Other good cause (as provided in paragraph d).

12

(See Exhibit "S", HAP Contract, Part C, Section 8a-b, pg. 9 of 10).

Per the Lease Agreement, the initial term of the lease began on May 11, 2010 and ended on April 30, 2011 with automatic two year renewals until notice of termination is provided by either the landlord or tenant. (See Lease Agreement, Exhibit "I"). The lease was renewed on April 30, 2013 and expired on April 30, 2015.

In both February and May, 2015 Defendant Harvey sent notices to the Hayes Family of his intention to not renew the lease which was set to expire on April 30, 2015. Pursuant to Pennsylvania and local laws, the termination of the term of the lease is a valid legal basis for evicting a tenant. See, Landlord Tenant Act of 1951. Moreover, the binding contract entered into between the Hayes Family, Defendant Harvey and the Philadelphia Housing Authority authorizes the termination of the lease upon the termination of the term.

Although the Lease Agreement and HAP Contract provide a section for termination of the tenancy by the owner during the term of the lease, such sections are not applicable given that the term of the lease had expired on April 30, 2015. (See, Exhibit "I", Lease Agreement, Section 9 Breaking the Lease and Exhibit "S" HAP Contract). Plaintiffs are violating the lease agreement and Pennsylvania Law by continuing to reside in the unit despite receiving the requisite notice to vacate the unit.

Plaintiffs purports to claim that "multiple federal courts have...granted preliminary and permanent injunctions protecting assisted tenants' Right to Remain." However all the cases cited by Plaintiffs have no bearing on the case at hand and are entirely distinguishable from the facts of this case. In all the cases cited by Plaintiffs, *Park Village Apts. et al. v. Mortimer Howard Trust*, 2007 U.S. Dist. LEXIS 14516, *Feemster v. BSA Ltd*, 548 F. 3d 1063 (D.C. Cir. 2008), *aff'g in*

13

*relevant part*, 471 F. Supp, 2d 87 (D.D.C. 2007); *Barrientos v. 1801-1825 Morton, LLC*, No.:

06-6437, 2007 WL 7213974 (C.D. Cal. Sept. 11, 2007, *aff'd on other grounds*, 583 F.3d 1197

(9th Cir. 2009; *Estevez v. Cosmopolitan Assoc., LLC*, No.: 05-4318, 2005 WL 3164146 (E.D.N.Y

Nov. 28, 2005): *Jeanty v. Shore Terrace Realty Ass'n*, No. 03-8669, 2004 WL 1794496

(S.D.N.Y. Aug. 10, 2004), the landlord-defendants had all received federal assistance through the

project based Section 8 Program and all had opted out of the program.

      In the case at hand, Defendant Harvey is not the "opt-out" landlord.  Instead he is a

landlord who purchased the property at market rate.  As noted supra, Defendant Harvey never

purchased a project based property[4] and certainly never received any federal subsidy to purchase

the home at market rate for $1,215,000.  There is no case law cited by Plaintiffs, and none exists

even by their own admission, to support their proposition that an owner such as Defendant

Harvey who purchased the property with no deed restrictions, no federal subsidy, no federal

insurance, no federal mortgage, and no project based Section 8 Contract is required to permit the

Hayes Family to reside in the unit in perpetuity.

      Notwithstanding that Defendant Harvey never entered into a project based Section 8

Contract with HUD, the First Circuit Court of Appeals has held that "there is no statutory

authorization which would require the Owners to continue participating in HAP contracts once

they expired.  See, *In People to End Homelessness, Inc. v. Develco Singles Apartment*

*Associates*, 339 F. 3d 1 (1st Cir. 2003) in which the project based HAP contract was set to expire

and the owner sent a non-renewal notice to each tenant.  HUD then issued the tenants who chose

---

    [4] Plaintiffs admit that the previous owner had opted out of the project based Section 8
Contract in 2008.

14

to remain enhanced vouchers.  Plaintiffs filed suit in the District Court seeking to enjoin defendant from evicting them stating failure of the opt out letter to comply with the law.  The court granted the restraining order prohibiting the owners from evicting the tenants for one year or until they received the appropriate notice letter.  However, it also granted defendant-owner's motion for summary judgment finding that 42 U.S.C. §1437 f(t) only obligated HUD to provide a voucher and that the landlord was estopped from evicting only during the one year notice period.

The First Circuit found that §1437 f(t) concerned only HUD's obligation to not force "enhanced voucher tenants" to leave their residence upon the expiration of the project based contract.  Id at. 4. Per the statute, the tenants "may elect to remain," and if they do make such election, HUD must issue them an enhanced voucher so as to permit the tenant to pay the higher rent that may now be charged by the landlord-owner.

Under the 2000 amendment to ¶1437 f(t), Congress clarified that HUD may not avoid its obligation to issue an enhanced voucher by insisting that the tenant leave his or her unit when an "eligibility event" such as the expiration of the project-based contract occurs. 114 Stat. 569 (2000), Pub. L. No. 106-246 §2801.  The Section 8 Renewal Policy further clarifies that the assisted families have "the right to remain in their units as long as the units are offered for rental housing when issued an enhanced voucher.." Clearly the purpose of the "may elect to remain" language regards HUD's obligation to issue the enhanced voucher and pay the higher rent if the tenant chooses to remain, not that the family has the right to remain indefinately.

HUD's intended purposes is also explicit when they issued PIH 2001-41 in November, 2001.  The notice specifically provides that:

15

"***Housing Conversion Actions: When an owner chooses to end participation in certain programs by either opting-out of or not renewing certain expiring Section 8 contracts***, eligible low-income residents assisted under the expiring Section 8 project-based contract are eligible for enhanced voucher assistance."

(See PIH 2001-41, Section A, Housing Conversion Actions).

Also, PIH 2001-41, Section A 2(c) Eligibility event and existing leases:

Note that the eligibility event (e.g., the prepayment of the mortgage or voluntary termination of a mortgage insurance contract for a preservation eligible project and the approval of the flexible subsidy transaction for flexible subsidy projects) does not in itself necessarily terminate or modify the existing leases between the owner and the current residents of the project. ***An owner may only legally increase the rent or terminate the lease as provided under the terms of the lease and in accordance with state and local law.***

HUD specifically intended that the right to remain applied at the time of opt out and that the landlord owner has the right to terminate the lease in accordance with the law. The right to remain was solely intended for the one year opt out phase and not in perpetuity. In the case at hand, the termination of the tenancy of the lease is an eviction based on the law.

**D.      Good Cause, Which is Not Required in The Case At Hand, Exists for the Eviction of the Hayes Family**

Plaintiffs claim that good cause is required fails for a number of reasons.

1). Good cause is only required when the owner is seeking to terminate the tenancy[5]. In the case at hand, the tenancy automatically expired at the end of the term and as such Pennsylvania and local laws permit the eviction; and

---

[5] By definition tenancy is a holding, as of lands, by any kind of title; occupancy of land, a house, or the like, under a lease.

2). As noted above, the right to remain is only applicable at the time the project based owner opts out and provides the tenant the right to remain. It is only at this time that good cause is required to terminate the tenancy.

Assuming arguendo that Defendant Harvey is bound by the regulations of the enhanced voucher, which is specifically denied for reasons stated supra, it is averred that Defendant Harvey provided the Hayes Family good cause for the eviction.

24 C.F.R. §982.310 (d)(1), Owner Termination of Tenancy, provides that "good cause for termination of tenancy by owner may include, but is not limited to, any of the following examples:

    (i)    Failure by the family to accept the offer of a new lease or revision;

    (ii)    Family history of disturbances or destruction of property...;

    (iii)    The owner's desire to use the unit for person or family use, or for a purpose other than as a residential rental unit; or

    (iv)    A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, or desire to lease the unit at a higher rental).

Defendant Harvey informed the Hayes Family of his desire to use the unit for family use. The use of the unit for family use is sufficient good cause pursuant to the Section 8 regulations.

Plaintiffs argument that Defendant's desire to move in a family member is suspect is without basis. To begin with there is no legal basis for plaintiffs argument that Defendant Harvey failed to move his family into 540 B Pine Street. Plaintiffs merely raise this issue to create controversy where none exists. Of the two four bedroom units located in this duplex, 538B is the only unit the meets that needs of Defendant's family. In addition, tenants have

17

moved into 540B and is currently off the market.  Defendant's daughter, Elizabeth Hindman-Harvy, who recently had a child, testified that although she began discussing the move with her father in the spring of 2015 she and her family are only ready for a move now.  (Exhibit M, pgs. 11 -12).  Per the "good cause" listed by law, as opposed to good cause created by Plaintiffs, there is no requirement that a landlord collect or not collect rent from a family member.

### E.    The Granting of Plaintiffs' Preliminary Injunction is a Violation of the Fifth and Tenth Amendment of the Constitution

Plaintiffs' claim that even though no federal subsidy contract ever existed between Defendant and HUD and that Defendant Harvey never reaped the benefits of any subsidized mortgage, 42 U.S.C. §1437 f(t) grants them the right to remain in their rental unit in perpetuity.  Such an interpretation essentially transfers the property rights of a landlord to the tenant without just compensation and in violation of the Fifth and Tenth Amendments of the U.S. Constitution.

#### 1.    Violation of Fifth Amendment

The Fifth Amendment limits the federal government's power of eminent domain: "nor shall private property be taken for public use without just compensation."  U.S. Const., amend. V.  They Hayes Family's interpretation of the law results in a regulatory taking of personal property in violation of the Fifth Amendment of the U.S. Constitution which provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.  The "use of a restriction on real property may constitute a taking if not reasonably necessary to the effectuation of a substantial public purpose [citations omitted], or perhaps if it has an unduly harsh impact upon the owner's use of the property."  *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 127 (1978).

18

The "right to remain" restricts the use of private real property especially in the case at hand when Defendant Harvey never entered into a project based contract agreeing to restrict his property. To the contrary, he purchased his property with no deed restrictions and only entered into a tenant based contract with HUD which expired at the end of the term of the lease. Moreover, the taking resulting from the right to remain does not effectuate a substantial public benefit. Instead it unduly and harshly impacts the Defendant's use of the property. It cannot be said that a taking for the benefit of an enhanced voucher holders is a public benefit especially where the statute specifically identifies the limited private individuals who are being granted the alleged "right to remain."

Plaintiffs claim that they have an indefinite right to remain is a per se taking for Fifth Amendment purposes in that the government is requiring Defendant Harvey to suffer a permanent invasion of his personal property. This "permanent residency" is far more invasive than the running of cable lines through a personal property which our courts have found to be a taking under the Fifth Amendment. *Lingle v. Chevron U.S.A., Inc.* 544 U.S. 528, 538 (2005) (*citing Loretto v. Teleprompter Manhattan CATV Corp.*, 558 U.S. 419 (1982) in which the Court held that a state law requiring owners to permit cable companies to install cable facilities in apartment buildings was a taking.

"It has long been accepted that the sovereign may not take the property of *A* for the sole purpose of transferring it to another private party *B*, even though *A* is paid just compensation." *Kelo v. City of New London, Connecticut*, 545 U.S. 469, 477 (2005).

2.    **Violation of Tenth Amendment**

The Tenth Amendment provides, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectfully, or to the people." U.S. Const., amend. X.  Under the Tenth Amendment, the Court must determine whether an act of state sovereignty is protected by a limitation on an Article I power. *New York v. U.S.*, 505 U.S. 144, 157 (1992).

It has long been the law that the "disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government in whose jurisdiction the property is situated." *U.S. v. Fox*, 94 U.S. 315, 320 (1877).  Plaintiffs claim that they are entitled to remain essentially grants them a property interest in the Defendant's privately owned property in violation of the Tenth Amendment.

Accordingly, for all the reasons stated above Plaintiffs have failed to show a likelihood of success on their federal law claim.

**V.    PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM IF THEY ARE EVICTED**

Plaintiff Hayes Family has reaped the benefits of living in Society Hill since 1982. It is not uncommon for families, of any economic means, to move from their long lived place of residence for numerous reasons: divorce, job relocation, foreclosure, termination of lease by private landlord, inability to afford increased rent in the private market, etc.

The Hayes Family's connection to this area can continue as nothing prevents them from being members of their church, and the children will most likely remain members of the same school given the Philadelphia School District's policy of busing children from distant places.

20

Moreover, the family will continue to receive a federal subsidy for another rental unit of their choosing.

Accordingly, Plaintiffs have failed to show that they will suffer irreparable harm if evicted.

## VI.    GRANTING THE RELIEF WILL RESULT IN EVEN GREATER HARM TO DEFENDANT

For all the reasons stated above, including violations of Defendant Harvey's Constitutional Rights, the harm to Defendant Harvey is significantly greater than the harm to Plaintiffs.

## VII.   THERE IS NO PUBLIC INTEREST IN GRANTING PLAINTIFF'S REQUESTED RELIEF

Plaintiffs admit in this first paragraph that "federal courts... have upheld the Right to Remain for low income families who face the termination of their project based subsidy by providing them with Enhanced Vouchers." At no point did Defendant Harvey ever enter into a project based contract with HUD, accordingly by plaintiff's own admission, the right to remain is not applicable to this case.

For the reasons provided above, there is no public interest in granting plaintiffs' request for relief.

21

## VIII.   CONCLUSION

For the foregoing reasons, Defendant Harvey respectfully requests judgment in his favor and against Plaintiffs dismissing all claims against Defendant Harvey with prejudice.

Respectfully submitted,

KOLBER & RANDAZZO, PC

Susanna Randazzo, Esquire
Attorney I.D. #79116
Attorney for Defendant Harvey
One South Broad Street, Suite 1610
Philadelphia, PA 19107
(215) 567-1333
Fax (215) 567-2099
srandazzo@krpc-law.com

DATE:  September 14, 2015

22

## CERTIFICATE OF SERVICE

I, Susanna Randazzo, hereby certify that I caused a copy of Defendant Harvey's Motion

for Summary Judgment to be served to all parties electronically by the E-Filing system, or by

mail, on the date of E-Filing acceptance of the document.

> Rachel Garland, Esquire
> Community Legal Services
> 1424 Chestnut Street
> Philadelphia, PA 19102
> Attorney for Plaintiffs

KOLBER & RANDAZZO, P.C.

_____
Susanna Randazzo, Esquire

Dated: September 14, 2015