IN THE UNITED STATES EASTERN DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEODORE HAYES and AQEELA FOGLE : | CIVIL ACTION |
| Plaintiffs, : | |
| v. : | NO. 15-2617 |
| PHILIP E. HARVEY : | |
| Defendant. : | |

## ORDER

AND NOW, this _____ day of _____, 2015, upon consideration of the Plaintiffs' Motion for Summary Judgment and Defendant Philip E. Harvey's Response thereto, it is hereby ORDERED that Plaintiffs' Motion is DENIED and Plaintiff's Complaint For Declaratory and Injunctive Relief is hereby DISMISSED against Defendant Harvey with prejudice.

BY THE COURT:

_____
NITZA I. QUINONES                         J.

IN THE UNITED STATES EASTERN DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEODORE HAYES and AQEELA FOGLE | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | NO. 15-2617 |
| PHILIP E. HARVEY | : | |
| Defendant. | : | |

**DEFENDANT PHILIP E. HARVEY'S REPLY TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendant Harvey, by and through his attorney, Susanna Randazzo, Esquire, hereby replies as follows to Plaintiffs' Motion for Summary Judgment:

**A.    The Right to Remain Does not Run with the Property:**

Plaintiffs erroneous contention that the right to remain is broken only when the assisted family moves from the project or the voucher is made available for use by any family other than the original family is completely misplaced. To the contrary the right to remain is exercised by the tenant at the time of the HUD Conversion and/or eligibility action only and is broken once the lease terminates or good cause during the term of the lease. 42 U.S.C. §1437f(t)(B).

HUD Conversion actions occur in certain situations when project-based housing is terminated by an action of the ***project based property owner***. See Exhibit "U", HUD Notice PIH 2001-41, at 1 (issued November 14, 2001). There are four types of Housing Conversion Actions whereby HUD may provide tenant-based vouchers: (1) the Property Owner decides to opt-out or not renew a Section 8 project-based contract (project-based opt-outs); (2) the Property Owner prepays the mortgage or voluntarily terminates the mortgage insurance of a preservation eligible

property (preservation payments ); (3) HUD sells the property at a foreclosure sale or related transaction (HUD property disposition activities ); or (4) HUD terminates or decides not to renew a Section 8 project-based housing assistance payments (HAP) contract (HUD enforcement actions). Id. at pg. 3-4.

Plaintiffs contend that the "eligibility event" occurred in 2008 when the previous owner, Pine Street Associates, opted out of their project based contract with HUD.  At that time plaintiffs exercised their right to remain and HUD was required to provide the Hayes Family with an enhanced voucher.  The right to remain simply implies that a project based tenant is permitted to remain in the unit even though the voucher payment exceeds the public housing authority's payment standard.  In other words, enhanced vouchers are available to enable tenants to remain in units no longer governed by the project based contract.  Without this provision the project based tenant would be required to move out at time of conversion since the rent is substantially higher than permitted by a regular voucher.  (See Exhibit "Q", HUD Memorandum For Multifamily Project Owners).

Plaintiffs site to no authority that provides that the right to remain attaches to the property as no such law exists.  Moreover, the title search to this property revealed no encumbrances, restrictions and/or liens.  (See Exhibit R).  Plaintiffs theory that the right to remain "runs with the property" would essentially make the Hayes Family the owners of the property since they, and only they, have the right to say when they want to leave, who lives in the unit, how much rent to collect and what to do with the property.  Furthermore, upon the death of Plaintiffs, the three minor children currently residing in the unit would essentially "inherit" the right to remain and Defendant Harvey would not be permitted to evict them either.  Such a theory runs contrary to the fundamental laws of our country and the intent of the enhanced voucher legislation.

Incredibly Plaintiffs disregard the line of cases which provide that the enhanced voucher does not provide a perpetual right to remain. See *Feemster v. BSA Limited Partership*, 471 F. Supp. 2d. 87 (D.D.C. 2007)(the D.C. Circuit Court ruled against the "opt owner" and found that tenants have a federal statutory right to remain until their *tenancies are validly terminated under local law*); and *In People to End Homelessness, Inc. v. Develco Singles Apartment Associates*, 339 F. 3d 1 (1st Cir. 2003) (finding that 42 U.S.C. §1437 f(t) only obligated HUD to provide a voucher and that the landlord was estopped from evicting only during the one year notice period).

In citing the history of enhanced vouchers[1], the 9th Circuit Court of Appeals in *Barrientos v. 1801-1825 Morton, LLC*, No.: 06-6437, 2007 WL 7213974 (C.D. Cal. Sept. 11, 2007, *aff'd on other grounds*, 583 F.3d 1197 (9th Cir. 2009) stated the following:

> "HUD's 1995 final rule provides that the "good cause" requirement applies **"during the term of the assisted lease," but not "after a termination of the assisted lease,"** 60 Fed. Reg. 34,660, 34,673 (July 30, 1995), and emphasizes that its regulation strikes a "reasonable balance between the interest of the assisted tenant and the owner" because "the lease protects the tenant against arbitrary and ungrounded termination by the owner," while "the owner is not locked in, but may terminate the tenant for lease violation or other good cause," including a "business or economic reason," id. at 34,674.
>
> In 1996, Congress repealed the "endless lease" provision by eliminating the "good cause" requirement for nonrenewal, though it retained the requirement for termination of a tenancy during the term of the lease. Pub. L. No. 104-134, § 203(c)(2), 110 Stat. 1321, 1321-281 (1996).
>
> In 1998, Congress made the 1996 changes permanent. Pub. L. No. 105-276, §§ 545, 549(a), 112 Stat. 2461, 2596-604, 2607-09 (1998). The current governing statute provides that "during the term of the lease, the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause." 42 U.S.C. 1437f(o)(7)(C).

---

[1] Pursuant to 42 U.S.C. 1437f(t)(1) enhanced vouchers are treated similarly to the voucher assistance program with the exception of the payment schedule. The provisions of 42 U.S.C. 1437 (o) regarding termination of tenancy is applicable.

> In 1999, HUD issued final implementing regulations, leaving its definition of "good cause" unchanged. 64 Fed. Reg. 56,894 (Oct. 21, 1999). Thus, the relevant HUD regulation currently provides that " '[o]ther good cause' . . .may include, but is not limited to . . . [a] business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, or desire to lease the unit at a higher rental)." 24 C.F.R. § 982.310(d)(1)(iv). The regulations also provide that "[d]uring the initial lease term, the owner may not terminate the tenancy for 'other good cause,'. . . based on . . . a business or economic reason," id. § 982.310(d)(2), and that the initial lease term must be at least one year, id. § 982.309(a)(1).

In the case at hand, the lease terminated in April, 2015, thus good cause is not necessary. Plaintiffs failure to vacate the unit in compliance with the lease agreement creates a holdover in violation of Pennsylvania and local landlord-tenant laws.

### B. Defendant Harvey engaged in due diligence when purchasing the property

Plaintiffs argument that Defendant failed to do "anything beyond bare minimum due diligence" (Plaintiff's Motion, pg. 22) is without basis. To the contrary, Mr. Harvey engaged in the following activities prior to purchasing the property:

    1). He purchased title insurance which failed to reveal any encumbrances[2], liens or restrictions. (Exhibit R);

    2). He reviewed the HAP contract entered into between himself and the local housing authority which specifically stated that the lease terminates on the last day of the term of the lease. (See Exhibit "S", the HAP Contract and Exhibit D, Deposition of Philip Harvey, pg. 22);

    3). He researched Section 8 voucher program on the internet (Exhibit D, pg. 22); and

---

[2] The deed and/or title search did not provide that the property was to be conveyed with the prior approval of HUD. Accordingly, Defendant Harvey's ownership and rental rights cannot be restricted simply because plaintiffs refuse to move.

4). He reviewed the lease agreement entered into between Florence Hayes and himself which also provided for a termination of the lease.

For the foregoing reasons, Defendant Harvey respectfully requests judgment in his favor and against Plaintiffs dismissing all claims against Defendant Harvey with prejudice.

          Respectfully submitted,

          KOLBER & RANDAZZO, PC

          _____
          Susanna Randazzo, Esquire
          Attorney I.D. #79116
          Attorney for Defendant Harvey
          One South Broad Street, Suite 1610
          Philadelphia, PA 19107
          (215) 567-1333
          Fax (215) 567-2099
          srandazzo@krpc-law.com

DATE:  September 28, 2015

## CERTIFICATE OF SERVICE

I, Susanna Randazzo, hereby certify that I caused a copy of Defendant Harvey's Response to Plaintiffs' Motion for Summary Judgment to be served to all parties electronically by the E-Filing system, or by mail, on the date of E-Filing acceptance of the document.

Rachel Garland, Esquire
Community Legal Services
1424 Chestnut Street
Philadelphia, PA 19102
Attorney for Plaintiffs

Jennifer R. Clarke
Public Interest Law Center
1709 Benjamin Franklin Parkway, 2d Fl.
Philadelphia, PA 19103

KOLBER & RANDAZZO, P.C.

_____
Susanna Randazzo, Esquire

Dated: September 28, 2015