# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

THEODORE HAYES and                          :
AQEELA FOGLE                                :
                                            :        Case No. 15-cv-2617
Plaintiffs,                                 :
                                            :
v.                                          :
                                            :
PHILIP E. HARVEY                            :
                                            :
Defendant                                   :
_____:


## ORDER FOR INJUNCTION PENDING APPEAL

AND NOW THIS _____ of _____, it is hereby

ordered pursuant to Federal Rule of Appellate Procedure 8(a)(1)(C) that Defendant Philip

E. Harvey and any person acting on his behalf are to refrain from evicting the Hayes

family from 538B Pine Street or taking any action to accomplish such an eviction

pending the appeal of this case to the Third Circuit.



Dated: _____        _____
                              U.S. District Court Judge

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

THEODORE HAYES and                     :
AQEELA FOGLE                           :
                                       :        Case No. 15-cv-2617
Plaintiffs,                            :
                                       :
v.                                     :
                                       :
PHILIP E. HARVEY                       :
                                       :
Defendant                              :
_____:

**PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL**

Pursuant to Rule 8(a)(1)(C) of the Federal Rules of Appellate Procedure,

Plaintiffs, by and through their undersigned counsel, hereby move for an injunction

pending appeal to the Third Circuit ordering Defendant Philip E. Harvey and any person

acting on his behalf to refrain from evicting the Hayes family from 538B Pine Street or

taking any action to accomplish such an eviction.  Plaintiffs incorporate the attached

Memorandum of Law in Support of Plaintiffs' Motion for Injunction Pending Appeal as

if set forth at length.  Plaintiffs respectfully request this Honorable Court grant their

Motion for Injunction Pending Appeal.


Dated:  June 3, 2016                    Respectfully submitted,


                                        _/s/ Rachel Garland_____
                                        Rachel Garland
                                        Michael Donahue
                                        George Gould
                                        COMMUNITY LEGAL SERVICES, Inc.
                                        1424 Chestnut Street
                                        Philadelphia, PA 19102
                                        Telephone: 215-981-3778
                                        _Attorneys for the Plaintiffs_

2

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
THEODORE HAYES and          :
AQEELA FOGLE              :
                           :     Case No. 15-2617
Plaintiffs,               :
                           :
v.                         :
                           :
PHILIP E. HARVEY        :
                           :
Defendants             :
_____:

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR AN INJUNCTION PENDING APPEAL**

      Pursuant to Rule 8(a)(1)(C) of the Federal Rules of Appellate Procedure,

Plaintiffs Theodore Hayes and Aqeela Fogle (hereinafter "Hayes family") move this

Court to issue an injunction pending appeal to the Third Circuit ordering Defendant

Philip E. Harvey (hereinafter "Defendant Harvey") and any person acting on his behalf to

refrain from evicting the Hayes family from 538B Pine Street or taking any action to

accomplish such an eviction.


    **I.**        **PRELIMINARY STATEMENT**

      The Plaintiffs in this action, the Hayes family, are a low-income tenant family

who are facing eviction from the home they have rented since 1982.  The Hayes family

currently rent this home with the rental subsidy assistance of a tenant-based Section 8

Enhanced Voucher (hereinafter "Enhanced Voucher") issued to them by the Philadelphia

Housing Authority pursuant to 42 U.S.C. § 1437f(t) (hereinafter "Enhanced Voucher

Statute").  On February 17, 2015 and May 1, 2015 Defendant Harvey served the Hayes

family with non-renewal of lease and eviction notices without good cause to evict, as required by federal law.

The Plaintiffs' claim in this case is based on Defendant Harvey's violation of federal law expressly granting Enhanced Voucher assisted families the Right to Remain. According to the Enhanced Voucher Statute:

> The assisted family may elect to remain in the same project in which the family was residing on the date of the eligibility event for the project … [unless] (i) the assisted family moves, at any time, from such project; or (ii) the voucher is made available for use by any family other than the original family on behalf of whom the voucher was provided.

42 U.S.C. § 1437f(t)(1).  The Department of Housing and Urban Development (hereinafter "HUD") has provided further guidance on the Right to Remain through the issuance of two versions of their Section 8 Renewal Policy: Guidance for the Renewal of Project-Based Section 8 Contracts (hereinafter "Section 8 Renewal Policy") in 2008 and again in 2015:

> Tenants who receive an enhanced voucher have the right to remain in their units as long as the units are offered for rental housing when issued an enhanced voucher sufficient to pay the rent charged for the unit, provided that the rent is reasonable. Owners may not terminate the tenancy of a tenant who exercises this right except for cause under Federal, State, or local law.

Section 8 Renewal Policy § 11-1 B (2008 and 2015), attached as Exhibit A.  In addition HUD Deputy Assistant Secretary for Multifamily Housing Programs, Benjamin T. Metcalf, issued a letter on June 5, 2014, and HUD Director, Office of Housing Voucher Programs, Michael Dennis, sent a similar letter to Public Housing Agencies Executive Directors on May 22, 2014 (hereinafter collectively "HUD Letters Regarding Enhanced Vouchers") reiterating the Section 8 Renewal Policy guidance and reinforcing that the

4

Enhanced Voucher families have the Right to Remain and that this Right to Remain extends beyond the initial year of the assisted family's tenancy. HUD Letters Regarding Enhanced Vouchers attached as Exhibit B.

Since purchasing the Hayes family residence in 2010 Defendant Harvey has accepted over $120,000 in public subsidy, has received full market rent for the unit, has benefited from having a stable and reliable tenant, and is now without good cause, refusing to comply with basic legal obligations that accompany this subsidy. The Plaintiffs, on the other hand, are persons of limited financial means who face serious hardship and injury if forced to relocate from their home.

## II.    LEGAL STANDARD

Federal Rule of Appellate Procedure 8 states that "a party must ordinarily move first in the district court for the following relief: "… an order … granting an injunction while an appeal is pending." Federal Rule of Appellate Procedure 8(a)(1). The Third Circuit Court of Appeals has held, in determining whether to grant a stay, that the district courts shall consider the following factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Republic of Philippines v. Westinghouse Elec. Corp*., 949 F.2d 653, 658 (3d Cir. 1991). In this case, an injunction barring Defendant Hayes from proceeding with an eviction of the Hayes family is warranted because the Hayes family are likely to succeed on the merits and would suffer irreparable harm if an injunction barring eviction pending appeal

5

was not granted, while an injunction pending appeal would have no impact on Defendant Harvey's current position and would be in the public interest.  If this Court does not grant an injunction pending appeal, the case will be moot as the enhanced nature of the Hayes family voucher will be lost at the point where the Hayes family moves out of the project. The Enhanced Voucher Statute expressly provides that an Enhanced Voucher will turn into a regular tenant-based Section 8 voucher when the tenant family moves out of the unit in question.  42 U.S.C. § 1437f(t)(1)(C).   In order to preserve the enhanced nature of the Hayes family voucher, they must be allowed to remain in their unit, 538B Pine Street, until the Third Circuit has had an opportunity to rule on the appeal.

### III.     STATEMENT OF FACTS

This case centers around the specific Right to Remain of assisted families under the tenant-based Section 8 Enhanced Voucher section of the of the United States Housing Act of 1937, 42 U.S.C. § 1437f(t).

The Plaintiffs in this action are a low-income tenant family who have lived in their home in the Society Hill neighborhood of Philadelphia since 1982 and have strong family ties to the area.  The Defendant is the owner of the property, Philip E. Harvey, who purchased the property in 2010.  Prior to 2010 the Hayes family's home was part of a Washington Square East, a housing development built 1982 and subsidized with federal project-based Section 8 subsidies under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f.

In 2008 the then-owner of Washington Square East opted out of renewing the project-based Section 8 contract, and as required by federal law, the United States

Department of Housing and Urban Development (hereinafter "HUD") provided the
Philadelphia Housing Authority with the funding to issue tenant-based Section 8
Enhanced Vouchers to the tenants pursuant to 42 U.S.C. § 1437f(t) (hereinafter
"Enhanced Voucher Statute").  The enhanced nature of the vouchers ensures that
subsidized housing tenants can remain in their homes and neighborhoods even when
gentrification, or other reasons, leads to the termination of their developments' project-
based Section 8 subsidies.  Federal law differentiates Enhanced Vouchers from regular
tenant-based Section 8 vouchers in two respects: (1) Enhanced Voucher tenants have the
Right to Remain in their homes and (2) the local housing authority is required to pay a
reasonable market rent for the leased unit, often far above the normal payment standard
that the housing authority would pay for a tenant-based voucher subsidy.  42 U.S.C. §
1437f(t)(1)(B).

        In August 2010 the Washington Square East owner sold part of the development,
the property parcel 536-540 Pine Street, to Defendant Harvey, with the Hayes family and
one other Enhanced Voucher family already under lease.  The property parcel consists of
three duplex row homes, each with a first floor one-bedroom apartment, and a four-
bedroom apartment upstairs.  In addition to the two Enhanced Voucher families,
Defendant Harvey has an additional four units which are either currently rented to private
tenants, undergoing renovation, or are on the market for new private tenants.  One of the
other four units, 540B Pine Street is identical to the Hayes Family unit in every way,
except that it was fully renovated in 2015 and is a corner unit as opposed to an inner-row
unit.  The unit is currently publicly listed as available for and is still being shown to

prospective tenants for a lease term beginning in July 1, 2016.  See Declaration of Ian Charlton and Trulia Rental Listing attached as Exhibit C.

On February 17, 2015 Defendant Harvey sent the Hayes family a notice of non-renewal of lease and on May 1, 2015 sent a five-day eviction notice seeking to evict the Hayes family for various reasons in violation of the Hayes family's Right to Remain under 42 U.S.C. § 1437f(t).

On May 12, 2015 the Hayes Family filed a complaint and preliminary injunction in the Eastern District of Pennsylvania seeking to enjoin Defendant Harvey or anyone acting on his behalf from evicting the Hayes Family from their home at 538B Pine Street or taking any action to accomplish such an eviction.  Docket No. 2 and 4.  On September 13 and 14, 2015 the Hayes Family and Defendant Harvey filed cross motions for summary judgment.  Docket No. 16 and 17.  On May 10, 2016 this Court entered a memorandum and order denying the Hayes Family's motion for summary judgment and granting Defendant Harvey's motion for summary judgment and denying the Hayes Family's motion for preliminary injunction as moot.  Docket No. 24-26.  See Memorandum and Order attached as Exhibit D.  The Hayes Family are now appealing this Court's decision to the Third Circuit and request an injunction barring Defendant Harvey from evicting the Hayes family pending the appeal.  Docket No. 27.  See Notice of Appeal attached as Exhibit E.  This request for an injunction pending appeal is necessary because on May 25, 2016 Defendant Harvey filed a Landlord Tenant Complaint in the Philadelphia Municipal Court against the Hayes family seeking possession of 538B Pine Street.  An eviction hearing is scheduled for June 15, 2016.  See Landlord Tenant Complaint attached as Exhibit F.

## IV.   LEGAL ARGUMENT

### A.  Plaintiffs' Appeal is Likely to Succeed on the Merits

Plaintiffs' appeal is likely to succeed on the merits because this Court's memorandum and order denying Plaintiffs' motion for summary judgment and granting Defendant's motion for summary judgment misinterpreted the statutory, regulatory and case law construction of the Right to Remain of tenants with Enhanced Vouchers.  This Court conflates three distinct federal subsidies and inappropriately applies the wrong regulations to the Enhanced Voucher program, which is at issue in this case.

Furthermore, this Court misunderstood plaintiffs' argument.  This Court found that plaintiffs were arguing in the alternative that Enhanced Voucher tenants either have the Right to Remain so long as the leased unit continues to be offered as rental housing, OR that an Enhanced Voucher lease can only be terminated for good cause. Order, p. 6.  Plaintiffs' argument is not in the alternative.  Plaintiffs contend that the Enhanced Voucher Statute, HUD's regulatory guidance and case law all dictate that an Enhanced Voucher lease can be terminated only when: (1) the leased premises is no longer offered as rental housing, (2) the tenant family is no longer the family to have received the Enhanced Voucher, or (3) there exists other good cause to terminate the lease.  This Court finds that the first restriction does not apply, does not address the second restriction and states that the third restriction is not necessary under the Court's interpretation of the statute.

**1.  This Court's Analysis Conflates three Federal Subsidies and Incorrectly Intermingles their Statutory Regulations**

Throughout the this Court's analysis, the this Court conflates three federal subsidies – project-based Section 8, tenant-based Section 8 voucher and Enhanced Voucher – and incorrectly intermingles their statutory regulations in reaching the erroneous legal interpretation of the statute.  While all three federal subsidies stem from Section 8 of the United States Housing Act, 42 U.S.C. § 1437f, they each serve very different purposes and are each governed by distinct sections of the statute.

The project-based  rental programs began in the 1960's when the federal government began subsidizing and insuring mortgage loans for the construction of multi-family housing that was to be affordable for low-income tenants through federal subsidies.  *See* Housing and Urban Development Act of 1968, Pub. L. No. 90-448, §§ 201(a), 236(a)-(g), 82 Stat. 476, 498-503 (1968).  Owners could prepay the loans after twenty years and would no longer be part of the program and subject to its restrictions. 24 C.F.R. § 221.524(a)(ii) (1970).  Subsequently, starting in the mid-70s, Congress also provided project-based rental assistance through the Section 8 program to many of these properties, to further reduce rents to levels affordable to low-income tenants and provide stable income to the owner. Housing and Community Development Act of 1974, Pub. L. No. 93-383, tit. II, 88 Stat. 633, 653, 662 (1974). The project-based funding is tied to the multi-family project and does not follow the tenant if the tenant moves out of the project.  In the 1990's and early 2000's, Congress enacted specific amendments to the United States Housing Act to put in place protections for tenants living in project-based units if the owner chose not to continue with the project-based subsidy program.  These protections include a lengthy notice period, the specifics of the notice given to the

tenants, and a substitute subsidy to protect the existing tenant's ability to continue living affordably in their homes, despite the owner's desire to no longer maintain the entire project as affordable housing.

The tenant-based Section 8 voucher program is a very different subsidy framework where the subsidy is administered by the local housing authority and is given on behalf of individual tenant families to their private landlords.  The tenant-based voucher program ("Housing Choice Vouchers," or "HCVs") is governed by a different subsection of the United States Housing Act and has a separate set of HUD regulations. 42 U.S.C. § 1437f(o) and 24 C.F.R. 982.  While some of the terminology used in both programs is the same, there are very different rules and regulations governing these two distinct subsidy frameworks, supported by differing policy needs.  A Section 8 project-based owner entered into an initial long-term (often twenty years) Housing Assistance Payments contract with HUD for a subsidy for an entire building, or a portion of a building.  In the event that the owner chose not to renew the long-term contract, Congress set up strict procedures for the owner to follow.  The Section 8 tenant-based HCV program is different in that the private landlord renting to one Section 8 tenant based voucher family enters into a one-year Housing Assistance Payments contract with the local housing authority (not with HUD) and this contract terminates along with the lease when the lease is validly terminated at the end of its term or any extensions.  Prior to 1996, a Section 8 tenant-based landlord needed good cause to terminate a tenant based voucher lease either mid-lease term or at the end of a lease term, but since then a tenant-based Section 8 voucher landlord only needs good cause to terminate during the lease

term and is free to do so at will at the end of the lease term, usually with sixty days' notice.

In contrast to both the project-based Section 8 subsidy and the tenant-based HCV subsidy is the very small and distinct world of Enhanced Vouchers.  The Enhanced Voucher program was a specific carve-out that Congress created to deal with the situation of tenants left in a precarious housing situation when the owners of their project-based subsidized building chose to no longer maintain the project as affordable housing. Beginning in the 1980's, many owners chose to prepay HUD-subsidized mortgages and Congress, in an attempt to preserve assisted housing and prevent forced relocation of assisted tenants, first enacted restrictions on owners' ability to do so.  *See* Low Income Housing Preservation and Resident Homeownership Act of 1990, Pub. L. No. 101-625, § 601(a), 104, Stat. 4079, 4249 (1990), Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, Title II, 101 Stat. 1815, 1877-91 (1988).  Subsequently, a similar termination risk arose with project-based Section 8 subsidies, and Congress authorized new incentives to encourage owners with expiring contracts to remain in the program. Multifamily Assisted Housing Reform and Affordability Act of 1997, Pub. L. No. 105-65, § 524, 111 Stat. 1343, 1384 (Oct. 27, 1997), *codified at* 42 U.S.C.A. § 1437f note (West 2015) (Historical and Statutory Notes, "Multifamily Housing Assistance").  In 1999 and then in 2000, Congress took the additional measures of enacting legislation that created and then further protected the assisted tenants' Right to Remain in their formerly subsidized units after the owners prepaid their loans or opted out of their housing assistance contracts.  *See* Pub. L. No. 106-74, § 538, 113 Stat. 1047, 1122-24 (1999) and

Pub. L. No. 106-246, § 2801, 114 Stat. 511, 569 (2000) (these Enhanced Voucher protections are currently codified as amended at § 1437f(t)).

The Enhanced Voucher program has two key components: (1) the right of the tenant family to elect to remain in their unit and (2) the requirement that the housing authority will pay a reasonable market rent for the unit, even where that rent is above the normal voucher payment standard.  42 U.S.C. § 1437f(t)(1)(B).  Both of these statutory requirements are essential to the purpose of the Enhanced Voucher program because without either element, the Enhanced Voucher program would not actually enable tenants to remain in their homes with subsidized rent.  Especially significant here, Congress took specific action to clarify the Right to Remain by amending the statutory Enhanced Voucher language several months after initial enactment. Pub. L. No. 106-246, § 2801, 114 Stat. 511, 569 (2000).

This Court at times conflates the opt-out process for project-based Section 8 owners seeking to end their decades' long Housing Assistance Payments contract with an eviction or lease non-renewal notice by a landlord to a tenant-based voucher tenant. Order pp. 11 and 14-15.  These are two very different processes with two different sets of rules and regulations, but neither is much relevant to the situation presented here.  This Court erred in failing to focus on the statutory, regulatory and case law which lays out when and how a landlord can terminate or decide not to renew an individual tenant's Enhanced Voucher lease.  Instead, the Court focused on the statutory and regulatory process for a project-based Section 8 owner to opt-out of renewing its contract for an entire subsidized project and attempted to use that to understand Congress's intent on

whether landlords could renew any lease, regardless of the type of subsidy.  Order, p. 14-15.

This Court also conflates the rules for terminating or not renewing a lease under the regular tenant-based Section 8 voucher program with those applicable to the Enhanced Voucher program.  Order, p. 19.  This Court order cites to a section of the statute, § 1437f(o)(7)(C), which applies only to the regular tenant-based Section 8 voucher program, not to the more specific and uniquely situated Enhanced Voucher program.  Order, p. 19.  The Enhanced Voucher program, from a policy perspective, is a unique program in that it was created to ensure that subsidized housing tenants were able to stay in their homes, despite the decision of their project's landlords to no longer offer the whole project as affordable housing.   See HUD Letters Regarding Enhanced Vouchers, Exhibit B.  For this specific and narrowly defined purpose, Congress enacted specific statutory requirements that gave these vouchers an enhanced nature – specifically, the Right to Remain and the corresponding increased subsidy payments.  Congress did not extend these protections to all regular tenant-based voucher holders.  Plaintiffs are not arguing that all regular tenant-based voucher holders have leases which require good cause to terminate at the end of the lease term.  Rather, Plaintiffs contend, as other courts have recognized, that the Enhanced Voucher Statute requires that tenancies subsidized with Enhanced Vouchers can only be terminated for good cause at the end of the lease term.

**2. This Court's Interpretation of the Enhanced Voucher Statute is Contrary to the Plain Meaning of the Statute.**

This Court's interpretation of the Enhanced Voucher Statute is contrary to the plain meaning of the statute.  The Enhanced Voucher Statute, provides that:

> The assisted family may elect to remain in the same project in which the family was residing on the date of the eligibility event for the project, and if, during any period the family makes such an election and continues to so reside, the rent for the dwelling unit of the family in such project exceeds the applicable payment standard … the amount of rental assistance provided on behalf of the family shall be determined using a payment standard that is equal to the rent of the dwelling unit … [the voucher will lose its enhanced nature if] (i) the assisted family moves, at any time, from such project; or (ii) the voucher is made available for use by any family other than the original family on behalf of whom the voucher was provided.

42 U.S.C. § 1437f(t)(1).

This Court reads the Enhanced Voucher Statute very narrowly as saying that *if* the tenant elects to remain, the housing authority is *only* required to pay an appropriate subsidy amount to allow the tenant to do so.  Order p. 12.  This Court does not find that the Enhanced Voucher Statute obligates an owner to continue renting to a tenant and that the statute is silent on whether an owner is required to allow the tenant to remain.  Order, p. 12 and 17.  This reading directly contradicts the established plain meaning rule.  Congress's chosen language, clarified shortly after initial enactment, clearly ties the Right to Remain to the assisted family and the property and *not* to the opt-out owner.  The statute provides that "*the assisted family may elect to remain in the same project in which the family was residing on the date of the eligibility event for the project*."  42 U.S.C. § 1437f(t)(1)(B) (emphasis added).  The two exceptions to the Right to Remain specified in the statute further emphasize that the Right to Remain runs with the property

15

and not with the owner: "(i) the assisted family moves, at any time, from such project; or (ii) the voucher is made available for use by any family other than the original family on behalf of whom the voucher was provided."  42 U.S.C. § 1437f(t)(1)(C).

Statutes should be read and understood according to their plain language. *McNeil v. United States*, 131 S.Ct. 2218, 2221 (2011); *United States v. Cooper*, 396 F.3d 308, 310 (3d Cir. 2005).  The plain language of the Enhanced Voucher Statute specifies the tenant's election to remain, and references only changes involving the assisted family – not  actions taken by the property owners – as affecting the enhanced subsidy. The language makes it clear that the Right to Remain cannot be terminated at will by the owner.

This Court further misinterprets legislative intent in support of its conclusion. This Court analyzes the legislative intent behind Congress's decision to do away with the good cause requirement for landlords renting to tenants with tenant-based HCVs at the end of a lease term – initially, back in 1996 -- and superimposes this legislative intent onto the Enhanced Voucher Statute that was separately enacted in 1999 and clarified in 2000.  Order, p. 12-13.  Instead, the meaning of the Enhanced Voucher Statute should be deduced from the legislative intent of Congress's development of that statute.  When Congress first enacted the Enhanced Voucher Statute in 1999, it did not include a specific Right to Remain.  The original language enacted stated that a tenant family was entitled to an Enhanced Voucher "during any period that the assisted family continues residing in the same project." Pub. L. No. 106-74, § 538, 113 Stat. 1047, 1122 (1999).  Within a year later, Congress amended the language to its current form to explicitly provide that "the

assisted family *may elect* to remain in the same project".  Pub. L. No. 106-246, § 2801, 114 Stat. 511, 569 (2000).

These actions by Congress in 1999 and 2000 regarding the Enhanced Voucher program are in stark contrast to Congress's previous actions in 1996 to allow landlords renting to  ordinary tenant-based HCV tenants to terminate the lease without good cause at the end of a lease term.  When evaluated against this backdrop, it becomes clear that Congress intended to distinguish the Enhanced Voucher program from the ordinary tenant-based HCV program and provide increased protections to Enhanced Voucher tenants that would allow them to remain in their often, rapidly gentrifying neighborhoods, despite possibly contrary desires of their landlords to evict.  This Court's interpretation of the Enhanced Voucher Statute – that the owner can terminate the tenant's ability to remain at will at the end of the lease term –renders the federal Right to Remain meaningless.

### 3.  This Court Failed to Consider Agency Guidance

This Court should have deferred to the guidance promulgated by the Department of Housing and Urban Development to interpret the Enhanced Voucher Statute.   This Court oddly fails to mention or consider two key items of recent guidance provided by the HUD:  (1) the two Section 8 Renewal Policies issued in 2008 and again in 2015, and (2) HUD Letters Regarding Enhanced Vouchers all of which specifically address the rights of the Enhanced Voucher program.  HUD, in both its 2008 and 2015 issuances of the Section 8 Renewal Policy, reinforced the Enhanced Voucher Statute's Right to Remain, and the limited exceptions thereto:

> Tenants who receive an enhanced voucher have the right to remain in their units as long as the units are offered for rental housing when issued an enhanced voucher sufficient to pay the rent charged for the unit, provided that the rent is reasonable. Owners may not terminate the tenancy of a tenant who exercises this right except for cause under Federal, State, or local law.

HUD Section 8 Renewal Policy § 11-1 B (2008 and 2015), Exhibit A.  The HUD Letters Regarding Enhanced Vouchers reinforce this guidance and highlight that the Enhanced Voucher "extends beyond the initial year of assistance."  Exhibit B.

The 2008 Section 8 Renewal Policy further provides that "[o]wners may not terminate the tenancy of a tenant who exercises this Right to Remain except for cause under Federal, State or local law."  Ch. 11-3(B).  In 2015, this sentence of the Section 8 Renewal Policy was amended to read that "[i]f an owner refuses to honor the tenants right to remain, the tenant's remedy will be determined *by the provision of Federal law that provides for the right to remain (i.e., 42 U.S.C. § 1437f(t)(1))* and on State and local law." *Id.*  (emphasis added). HUD specifically instructs owners that these protections continue after the first lease term and that owners "must continually renew the lease of an enhanced voucher family" for as long as the unit is offered as rental housing and there is no good cause to evict the family."  *Id.*

For over thirty years the courts have deferred to agency interpretation of the laws that they administer either under the heightened *Chevron* deference or under the lesser *Skidmore* deference.  See *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) and *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  The Third Circuit, citing to *Chevron*, has held that "affording agencies significant discretion to interpret the law they administer recognized the value of agency expertise and the comparatively limited experience of the judiciary where an interpretation requires specialized knowledge."  *Hagans v.*

18

*Commissioner of Social Sec.*, 694 F.3d 287, 294 (2012) citing *Chevron*, 467 U.S. at 865. Regardless of which level of deference applies, the court must first determine whether the language of the statute is ambiguous. Plaintiffs' position is that the Enhanced Voucher Statute states that Enhanced Voucher tenants have a binding Right to Remain in their units and that *Skidmore* deference should be given to HUD's interpretation of the statute as stated in their Section 8 Renewal Policy and HUD Letters Regarding Enhanced Vouchers. Pursuant to *Skidmore*, this Court should have assigned a "weight" to the administrative judgment based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140. In this case, this Court failed to mention, much less assign any weight to HUD's well-considered interpretation of the Right to Remain.

**4. This Court's Interpretation Conflicts with the Unanimous Decisions of the other Federal Courts that have Interpreted the Statute**

Federal courts have unanimously and emphatically upheld Enhanced Voucher tenants' Right to Remain. Multiple recent federal court cases have considered the good cause required to evict Enhanced Voucher tenants and each time have granted preliminary and permanent injunctions protecting assisted tenants' Right to Remain. *See Park Village Apartments Tenants Assoc., et al., v. Mortimer Howard Trust, et al.*, 2007 U.S. Dist. LEXIS 14516, *Feemster v. BSA Ltd. P'ship*, 548 F.3d 1063 (D.C. Cir. 2008), *aff'g in relevant part*, 471 F. Supp, 2d 87 (D.D.C. 2007); *Barrientos v. 1801-1825 Morton, LLC*, No. 06-6437, 2007 WL 7213974 (C.D. Cal. Sept. 11, 2007), *aff'd on other grounds*, 583 F.3d 1197 (9th Cir. 2009); *Estevez v. Cosmopolitan Assocs. LLC*, No. 05-

4318, 2005 WL 3164146 (E.D.N.Y Nov. 28, 2005); *Jeanty v. Shore Terrace Realty Ass'n*, No. 03-8669, 2004 WL 1794496 (S.D.N.Y. Aug. 10, 2004).

   In 2005, in *Estevez*, the Eastern District of New York ruled that Enhanced Voucher assisted families have a private right of action to enforce their Right to Remain under 42 U.S.C. § 1437f(t), stating "a plain reading of [the statute] makes clear that, upon the occurrence of an eligibility event, Section 8 tenants receive added protections, notably the enhanced vouchers, with their increased value and the *unfettered right to remain*." (emphasis added) *Estevez* at *13.  The District Court in *Estevez* further held that with the Right to Remain, Congress "expressly intended to protect eligible tenants (through the use of enhanced vouchers) from losing their homes" by requiring that landlords renew the Section 8 leases absent serious or repeated violations of the lease or other good cause. *Estevez* at *17.

   In 2011 in *Park Village*, the Ninth Circuit again upheld the District Court's granting of a preliminary and permanent injunction to stop an owner from evicting Enhanced Voucher tenants, though reversing that portion of the District Court's injunction requiring the owner to enter into an Enhanced Voucher lease with the tenants. The Ninth Circuit held "that § 1437f(t) provides tenants a right to remain in their previously subsidized Section 8 rental units in the absence of just cause for eviction, and that tenants with enhanced vouchers cannot be required to pay more than their portion of the rent  as defined by the Section 8 statute and applicable regulations." *Park Village* at 1163.  In *Park Village*, the owner was refusing to enter into Section 8 voucher leases with the Enhanced Voucher tenants.  The Ninth Circuit held that "if owners are willing to forego significant rental income in order to avoid the obligations imposed by HAP

contracts, they are free to do so" and cannot be forced to enter into a Section 8 lease with the Enhanced Voucher tenant. However, the owner still cannot evict the Enhanced Voucher tenants at will, even if it refuses to execute a lease and foregoes the subsidy payments. *Park Village* at 1161.

The Right to Remain, is enforceable against "*owners* who would seek to evict" so long as the original family still lives in the same unit it occupied at the time of the eligibility event. *Park Vill.*, 636 F.3d at 1156 (emphasis added). *See also Barrientos I*, 2007 WL 7213974 at *6 ("The plain language of the statute…indicates that it is up to the assisted family, not the owner, to decide whether to continue tenancy upon occurrence of the eligibility event. Allowing an owner to refuse to accept the enhanced voucher would effectively take away the right to elect to remain."); *Estevez*, 2005 WL 3164146 at *4 ("The text of 42 U.S.C. § 1437f(t), given its ordinary meaning, makes clear that tenants renting apartments in developments receiving project-based assistance will, upon termination of that assistance, have the right to remain in their apartments as long as they remain eligible and continue to occupy the apartments."); *Jeanty*, 2004 WL 1794496 at *3 ("Giving the words used in 42 U.S.C. § 1437f(t)(1) and (2) their ordinary meaning, it is clear that the statute provides families renting at the time of the termination of the project-based subsidy contract the right to remain in their units, using enhanced vouchers, for so long as the tenant remains eligible for the vouchers or until the tenant is evicted.").

To date courts have only addressed whether an owner can refuse to accept Enhanced Vouchers at the time of contract opt-out or termination.  However, the Enhanced Voucher Statute, HUD's guidance and the Courts' rulings clearly show that the Enhanced Voucher rights and protections, including the Right to Remain, run with the

assisted family while they live in the property, and are not affected by a change in ownership.  Even this Court in this case agreed that Defendant Harvey is bound by the provisions of the Section 8 Enhanced Voucher Statute, despite his arguments to the contrary.  Order, p. 9-10.   Since the Enhanced Voucher Statute applies to the tenancy, regardless of ownership transfers, the Enhanced Voucher Statute, the interpretive guidance and the case law all require Defendant Harvey to have good cause to terminate or refuse to renew the Hayes Family's Enhanced Voucher lease.  The Court erred in its ruling in this case that Defendant Harvey can choose not to renew the lease at the end of the lease term without good cause.  Order, p. 10.  The case law clearly shows that if an owner could terminate the lease without good cause, the Right to Remain would be rendered meaningless.

In analyzing the case law, this Court in this case ignores the most applicable case law.  Instead this Court again conflates the legal requirements for the project-based Section 8 program and those of the Enhanced Voucher program.  The Court summarily dismisses the extensive recent body of case law discussed above as non-binding and instead focuses on one case, *People to End Homelessness, Inc. v. Develco Singles Apartments Assocs*, 339 F.3d 1 (1st Cir. 2003), which deals with the issue of whether HUD can require that a project-based owner renew a project-based Housing Assistance Payments contract.  Order, p. 15.  The case has no bearing on whether a landlord renting to a tenant with an Enhanced Voucher can or cannot be required to renew the lease at the end of the lease term.  This Court in this case then erroneously applies the holding in *Develco* and the associated project-based opt-out statutory requirements to analyze Defendant Harvey's actions.  Order p. 16-17.  Even while acknowledging that Defendant

22

Harvey is not an opting-out project-based owner and does not need to comply with the one-year notice, this Court argues that Defendant Harvey is in compliance because he essentially provided one-year notice.  This Court does not look at any of the other cases and at no point discusses whether good cause is required for a landlord to terminate an Enhanced Voucher lease, in contradiction to the holdings in these other cases.

### B.  The Plaintiffs Will Be Irreparably Harmed Absent an Injunction Pending Appeal

If this Court does not grant an injunction pending appeal, the case will be moot as the enhanced nature of the Hayes family voucher will be lost at the point where the Hayes family moves out of the project.   The Enhanced Voucher Statute expressly provides that an Enhanced Voucher will turn into a regular tenant-based Section 8 voucher when the tenant family moves out of the unit in question.  42 U.S.C. § 1437f(t)(1)(C).   In order to preserve the enhanced nature of the Hayes family voucher, they must be allowed to remain in their unit, 538B Pine Street, until the Third Circuit has had an opportunity to rule on the appeal.

Currently, the Philadelphia Housing Authority subsidizes a monthly contract rent of $2,400, a reasonable rent for the Hayes family's four-bedroom unit based on comparable rents for the neighborhood.  This contract rent is far above the Philadelphia Housing Authority's $1,546 (including utilities) payment standard for a four-bedroom unit rented with a normal tenant-based Section 8 vouchers.  If the Hayes family is evicted, they will lose the enhanced nature of their voucher and will have to find a home that falls within the regular payment standard of $1,546 (including utilities).  The Hayes family "will suffer actual and imminent harm if injunctive relief is not granted and such

23

harm could not be remedied by monetary damages" as there would be no way for them to regain the enhanced nature of their voucher. *Estevez* at \*8. *See also McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989) ("The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the first prong of the test for preliminary injunctive relief.").

In addition to rendering the issue in this case moot, the Hayes family will suffer great personal hardship if evicted from the home they have lived in since 1982. They will be forced to relocate from the now gentrified Society Hill neighborhood that their family has lived in for over eighty years to a poorer and far less desirable neighborhood outside of Philadelphia's revitalized center city. The Hayes family has strong family connections and involvement in three pillars of the Society Hill neighborhood: McCall – the local school where four generations have attended, including the three children on the lease; Mother Bethel – the local church; and Starr Garden – the playground and community center. Due to these strong connections, the family fought a ten-year court battle in the 1970's to be able to remain in their neighborhood. The two consent decrees and multiple judicial orders are what lead to the construction of the federally subsidized Washington Square East housing development in 1982 which included the home the Hayes family has lived in ever since.

**C.  Granting relief will not result in even greater harm to the Defendant.**

Defendant Harvey receives a monthly contract rent of $2,400. This rent amount is a reasonable rent amount for a four-bedroom unit in the un-renovated condition that 538B Pine Street is currently in, with a parking spot in the neighborhood, and is not

capped in any way by the Philadelphia Housing Authority's normal voucher payment standard. The Hayes family are good tenants who take care of their home and are respectful and respected neighbors. They have not breached their lease in any way. Defendant Harvey will continue to receive his full contract rent in full and on time if he continues to comply with the tenant-based Section 8 voucher program. If this Court grants relief, Defendant Harvey's ability to continue to receive the monthly contract rent amount will not be affected.

Furthermore, if this Court grants relief, Defendant Harvey can still choose to renovate the unit, while allowing the Hayes family to remain, and request that the Philadelphia Housing Authority perform a new rent reasonableness test to increase the contract rent to match the enhanced rental value of the property. Defendant Harvey can accomplish renovations either by doing them in parts while the Hayes family remains in the unit, or by temporarily or permanently transferring them to the identically sized unit in the same project, 540B Pine Street, which has already been renovated. If Defendant Harvey renovates the Hayes family unit, it will be a simple process for the Philadelphia Housing Authority and Defendant Harvey to reach agreement on a reasonable rent as they can look to the private market rents of the comparative units at 536B and 540B Pine Streets that have already been renovated

**D.  Granting relief is in the public's best interest.**

Congress, HUD and the federal courts have spent significant time and effort to enact and uphold the Right to Remain for low-income families who face the termination of their project-based subsidy by providing them with Enhanced Vouchers and increased

25

subsidies that will guarantee them the ability to remain in their homes, even as the neighborhoods around them rapidly gentrify. *See Estevez* at \*15-16*; Section 8 Housing: Hearing Before the Sen. Subcomm. On Hous. And Transp.*, 106th Cong. (1999) (written testimony of Rep. Rick Lazio, Chairman, H. Subcomm. Hous. And Cmty.) ("In many circumstances, standard vouchers are inadequate in the face of market-rate rents, forcing residents to either find other shelter or remain in their homes and face the awful choice between paying rent or buying food and medicine … enhanced vouchers will allow particularly vulnerable populations the ability to remain in their own homes."); *Senior Citizen Housing: Testimony before the Hous. And Cmty. Opportunity Subcomm. Of the H. Banking and Fin. Serv. Comm. On the Aging Crisis and H.R. 202; Preserving Affordable Houing for Senior Citizens into the 21st Century*, 106th Cong. (1999); H.R. Rep. No. 106-379, pt. 2 at 9 (1999) (Conf. Rep.).

The Hayes family are good neighbors who have long supported and provided leadership in the local school, church, park and community center.  The Hayes family bring racial and socio-economic diversity, historical memory and genuine care and concern for the neighborhood.  Their forced relocation would be a disservice not only to the fabric of their family but to that of Society Hill.


**CONCLUSION**

Based on the foregoing, the Plaintiffs request that the Court grant an injunction pending appeal ordering Defendant Harvey and any person acting on his behalf to refrain from evicting the Hayes family from 538B Pine Street or taking any action to accomplish such an eviction.

Dated:  June 3, 2016      Respectfully submitted,

           */s/ Rachel Garland*_____
           Rachel Garland
           Michael Donahue
           George Gould
           COMMUNITY LEGAL SERVICES, Inc.
           1424 Chestnut Street
           Philadelphia, PA 19102
           Telephone: 215-981-3778
           *Attorneys for the Plaintiffs*