UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
THEODORE HAYES and       :
AQEELA FOGLE             :
                         :  Case No. 15-cv-2617
Plaintiffs,              :
                         :
v.                       :
                         :
PHILIP E. HARVEY,        :
                         :
Defendant                :
_____:

**ORDER FOR SUMMARY JUDGMENT**

AND NOW THIS _____ of _____, the Court grants plaintiff's motion for summary judgment and hereby orders that Defendant Philip E. Harvey and any person acting on his behalf refrain from evicting the Hayes family from 538B Pine Street for reasons not based upon tenant misconduct that constitute a material breach of the lease, or taking any action to accomplish such an eviction.

Dated: _____          _____
                               U.S. District Court Judge

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THEODORE HAYES and<br>AQEELA FOGLE<br><br>Plaintiffs,<br><br>v.<br><br>PHILIP E. HARVEY,<br><br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: Case No. 15-cv-2617 |

**PLAINTIFF'S REPLY TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff respectfully submits the following in reply to Defendant's motion for summary judgment. Plaintiff and Defendant filed cross motions for summary judgment on November 27, 2019. Docket Nos. 44 and 45.

1. **The definition of good cause for the regular voucher regulations does not apply to the Enhanced Voucher program.**

Defendant Harvey relies on the wrong definition of good cause in asserting that he can choose not to renew the Hayes family's lease. Defendant Harvey's motion for summary judgment relies on the section of the United States Housing Act, 42 U.S.C. § 1437f(o)(7), and its corresponding Department of Housing and Urban Development ("HUD") regulations, 24 C.F.R. § 982.310, which define good cause for the regular tenant-based voucher program (also known as the Housing Choice Voucher program). This reliance is incorrect because the Hayes family do not have a regular tenant-based voucher, they have an Enhanced Voucher. Therefore the terms of their tenancy cannot be

2

governed by subsection (o) and its corresponding HUD regulation. In doing so, Defendant Harvey violates the Enhanced Voucher Statute's express protections that differentiate Enhanced Vouchers from the regular tenant-based voucher program. Subsection (o) of the United States Housing Act outlines the rules for the regular tenant-based voucher program. A later addition to the Act, subsection (t), enacted in 1999 and 2000, outlines the rules for the Enhanced Voucher program. Subsection (t) states that Enhanced Vouchers will be similar to regular tenant-based vouchers under subsection (o) in all respects except in a few fundamental ways. The most relevant fundamental distinction for this case is that Enhanced Voucher tenants have a Right to Remain in the project. The Third Circuit has ruled that this Right to Remain necessarily elevates the good cause protections for Enhanced Voucher tenants above what is required in the regular tenant-based voucher program. *Hayes v. Harvey*, 903 F.3d 32, 42 and 44 (3d Cir. 2018). The Third Circuit based its ruling on the plain meaning of subsection (t) and held:

> This right to "choose ... by preference" to "stay in the same place" is not limited to any particular time period, and it is not directed to only HUD or any other specific party. Thus, the assisted family's right necessarily limits the ability of the property owner to evict. If a landlord could simply ignore an eligible family's choice to stay and force them to leave, the statutory right would be meaningless.

*Id*. at 42.

The first way in which the good cause requirement is different for the Enhanced Voucher program concerns the timing of when good cause applies. Subsection (o) states that "*during the term of the lease*, the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause…" 42 U.S.C. § 1437f(o)(7)(C) (emphasis added). This means that for the regular tenant-based voucher

program a landlord only needs to have good cause to terminate a lease during the term of the lease, but does not need good cause to fail to renew a lease at the end of the lease term. The Third Circuit ruled that the Enhanced Voucher program's Right to Remain necessitates that good cause be required both to terminate a lease during the lease term *and* to not renew the lease at the end of the lease term. *Hayes*, 903 F.3d at 42-44.

The second way in which the good cause requirement is different for the Enhanced Voucher program is the scope of what constitutes good cause. "Other good cause" is not defined in subsection(o). HUD issued regulations for subsection (o) of the Act specifically for the regular tenant-based voucher program, 24 C.F.R § 982, which provide a definition for "other good cause" as:

(i) Failure by the family to accept the offer of a new lease or revision;
(ii) A family history of disturbance of neighbors or destruction of property, or of living or housekeeping habits resulting in damage to the unit or premises;
(iii) The owner's desire to use the unit for personal or family use, or for a purpose other than as a residential rental unit; or
(iv) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, or desire to lease the unit at a higher rental).

24 C.F.R. § 982.310. These regulations were issued in 1995, four years before the Enhanced Voucher subsection (t) was added to the Act in 1999 and amended in 2000. At no point since enactment of the Enhanced Voucher program has HUD taken action to amend its prior regulations for the regular tenant-based voucher program to apply to Enhanced Vouchers and these regulations remain applicable solely to the regular tenant-based voucher program. 24 C.F.R. § 982.2.

The fact that § 982.310 does not apply to the Enhanced Voucher program is further reinforced by HUD's action in 2016 to issue a separate set of proposed regulations

4

specifically for the Enhanced Voucher program. 81 Fed. Reg. at 74374-75. These proposed regulations explicitly requested public comment on whether the regular tenant-based voucher definition of "other good cause," as defined in 24 C.F.R. § 982.310, should or should not apply in its entirety to the Enhanced Voucher program. These proposed regulations were never finalized or adopted and are thus, as the Third Circuit ruled, due no deference. *Hayes*, 903 F.3d at 48-49.

Defendant Harvey relies not just on a misapplication of the HUD regulations from the regular tenant-based voucher program. He also relies on footnotes 1 and 3 of HUD's amicus brief filed in this case in the Third Circuit. In their amicus brief, HUD incorrectly indicated in a footnote that HUD had already made a final decision that the expansive definition of "other good cause" from the regular tenant-based voucher regulations applied in the Enhanced Voucher context. While the Third Circuit indicated that some deference is due to HUD's amicus under *Skidmore*, the Court held that "HUD has not, however, promulgated good cause regulation that governs enhanced vouchers, and it has issued no relevant guidance." *Hayes*, 903 F.3d at 46 and 47 n.7. If the Third Circuit had, in fact, agreed with HUD's footnote, the Third Circuit would have stated so, and instructed this court to rule on whether Defendant Harvey's identified reasons for wanting to evict the Hayes family fell within the specified definition of good cause.

HUD's amicus brief footnote should be due no deference under *Skidmore*. Under Skidmore, an agency should be given deference where (1) the agency's interpretation of the statute is the only logical way to interpret the statute, (2) the agency has a high level of expertise on the policy reasons and technical requirements of the program it oversees, and (3) the agency is consistent in its interpretation of the statute. *See Hagans v. Comm'*

5

*of Social Sec.*, 694 F.3d 287, 294 (3rd Cir. 2012) (citing *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 865 (1984) and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). HUD's assertion that the "other good cause" definition found in § 982.310 should apply to the Enhanced Voucher program does not pass *Skidmore*'s test because HUD's assertion is not the only logical way to interpret the statute and it is inconsistent with HUD's prior guidance.

HUD's recent assertion is not the only logical way to interpret the statute. In contrast to HUD's amicus footnote, the courts have already ruled that this expansive definition of "other good cause" is inapplicable to the Enhanced Voucher program. In 2007, in *Barrientos*, the District Court for the Central District of California granted summary judgment and a permanent injunction to allow Enhanced Voucher assisted tenants to remain in their homes because the owners' attempt to evict them for a business or economic reason did not constitute sufficient good cause to terminate the families' Right to Remain. *Barrientos v. 1801-1825 Morton LLC*, 2007 WL 7213974, *9 and *20 (C.D.Cal 2007). As Defendant Harvey noted, the *Barrientos* Court agreed that landlords can evict or fail to renew leases if there is a good cause reason to evict and pointed toward § 982.310 for a list of possible reason. Defendant Harvey Reply Brief, p. 3. However, the *Barrientos* Court held that not all of these possible reasons could or should apply in the case of Enhanced Vouchers. The *Barrientos* court stated that "given the clear right to remain established by [§ 1437f(t)], Congress could not have intended that a recognized justification for the enhanced rent feature of enhanced vouchers—rent increases—would also constitute 'other good cause' to evict those same tenants." On appeal, the Ninth Circuit upheld the District Court's ruling on other grounds (i.e., that the

6

eviction was prohibited by local law, which was not preempted), though the Court stated that they agreed "that the eviction [based on a desire to raise the rent] violated the Enhanced Voucher Tenants' right to remain." *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1207 (9th Cir. 2009).

The *Barrientos* appeals court and the Third Circuit have both cited to HUD regulations in holding that the HUD regulations defining "other good cause" only establish a list of potential good cause reasons, not a required list. *Barrientos*, 583 F.3d at 1214 and *Hayes*, 903 F.3d at 49 *citing to* 60 Fed. Reg. 34,660, 34,673 (July 3, 1995) *quoting* 49 Fed. Reg. 12,215, 12,233 (Mar. 29, 1984). The Third Circuit has also noted that HUD has promulgated two different regulations regarding lease terminations for voucher tenants: § 982.310 governs the regular tenant-based voucher program discussed above and § 983 governs the project-based voucher program. Therefore § 982.310's list of "other good cause" reasons cannot be the only logical way to interpret the statute, as there is at least one other possible logical interpretation. *Hayes*, 903 F.3d at 48-49.

HUD's assertion is inconsistent with its interpretation of the Enhanced Voucher subsection (t) since its enactment. Over the past twenty years HUD has never taken the position it included in this recent amicus brief in any of its published regulations or sub-regulatory guidance. The Third Circuit, therefore rightly gave "considerable weight" rather than *Skidmore* deference to HUD to the extent that its amicus brief was consistent with its prior guidance. *Hayes*, 903 F.3d at 47. However, that deference should not be extended to HUD's erroneous assertion in footnotes 1 and 3 of its amicus brief.

### 2. Other good cause must be defined as based on tenant-misconduct.

Adopting an expansive definition in the Enhanced Voucher context of "other good cause" as reaching beyond tenant misconduct would vitiate the Right to Remain's good cause protection recognized by the Third Circuit. If the landlord could chose not to renew an Enhanced Voucher tenant's lease based on personal reasons of the landlord, it would undermine the Third Circuit's ruling that Enhanced Voucher tenants have a "right to choose to stay that their landlords must accept by continuing to renew their leases." *Hayes*, 903 F.3d at 43.

There are already multiple examples of when HUD has limited the use of good cause and "other good cause" to reasons based on tenant-misconduct. As noted by the Third Circuit, even in the regular tenant-based voucher program, "other good cause" is limited during the initial lease term. HUD regulations state:

> During the initial lease term, the owner may not terminate the tenancy for "other good cause," unless the owner is terminating the tenancy because of something the family did or failed to do. For example, during this period, the owner may not terminate the tenancy for "other good cause" based on any of the following grounds: failure by the family to accept the offer of a new lease or revision; the owner's desire to use the unit for personal or family use, or for a purpose other than as a residential unit; or a business or economic reason for termination of the tenancy.

982.310(d)(2). *See Hayes*, 903 F.3d at 48 n.8. Just as the Third Circuit was clear in its holding that the Enhanced Voucher's Right to Remain requires that good cause protections govern at the end of the lease term in addition to during the lease term, so too should this court find that the Enhanced Voucher's Right to Remain requires that other good cause be limited to tenant misconduct for the duration of the tenancy and not just during the initial lease term. The Third Circuit points towards an instance where other good cause is limited to tenant misconduct throughout the duration of the tenancy in the

project-based voucher program. *Hayes*, 903 F.3d at 48. Distinct from the project-based program, project-based vouchers are regular tenant-based vouchers that the local housing authority is allowed to tie to specific units. There are unique regulations for this sub-program found at 24 C.F.R. § 983, which limit the definition of "other good cause" to *not* include "a business or economic reason or desire to use the unit for an individual, family, or non-residential purpose." 24 C.F.R. § 983.257(a). In keeping with the Third Circuit ruling, the Right to Remain requires that Defendant Harvey renew the lease of the Hayes family unless there is a good cause reason related to tenant misconduct not to renew – just as is true during the initial lease term in the regular tenant-based voucher program and just as is true in the project-based voucher program through the tenancy.

### 3. Right to Remain is tied to the project, not the individual unit.

The plain meaning of the Enhanced Voucher subsection (t) is that the Right to Remain is tied to the project and not just to the individual unit. 42 U.S.C. § 1437f(t)(1)(B). Defendant Harvey's assertion that the Hayes family will lose their Enhanced Voucher status if they move to another unit is incorrect. HUD's guidance has recognized that the Right to Remain includes internal project moves necessitated by changes in household size or composition, as well as the Right to Remain in a unit that is too large if appropriate size units are unavailable. HUD Notice PIH 2016-02 (March 4, 2016). The Third Circuit held that Enhanced Voucher tenants have a Right to Remain which is tied to the whole project and not just a specific unit, despite HUD's use of "unit" in its amicus brief. *Hayes*, 903 F.3d at 44 n.6.

### 4. Court's determination as to good cause must be fact specific.

The Third Circuit recognized that good cause is a fact-intensive inquiry. *Hayes*, 903 F.3d at 49. The facts in this case do not support a finding that Defendant Harvey had good cause to not renew the Hayes family's lease either due to a desire to move in his daughter's family or a desire to renovate. The fact is that the project in question has two other comparable units to the Hayes family's unit. If Defendant Harvey wanted to move his daughter into the Hayes family's unit, Defendant Harvey could have moved the Hayes family into either of the two comparable units—both of which were vacant and available for rent at the time this case began and at least one of which was later available during the pendency of this case, or when they become available in the future. Exhibit D 53:15-54:19, 57:6-24, 64:23-65:11and 67:5-19, Exhibit E 18:23-19:12, 19:10-12, 19:18-20:3, 21:6-22:3 and 22:13-23:6 and Exhibit N, O and P. Likewise, if Defendant Harvey wanted to renovate the Hayes family's unit, Defendant Harvey could have temporarily or permanently relocated the Hayes family to either of the comparable units when they were available in order to do so, or when they become available in the future. Defendant Harvey does not dispute this, he only states that there is no other unit available at the current point in time.

As the Third Circuit holds, when subsection (t) was enacted to create the Enhanced Voucher program it necessitated that certain aspects of the regular tenant-based voucher program found in subsection (o) would need to be modified. The Third Circuit gave clear guidance that the Right to Remain provides strong grounds for modification of when and how good cause can be used to end an Enhanced Voucher's tenancy—good cause is required to evict at the end of the lease term and not just during the lease term.

By extension, good cause must be limited to reasons based on tenant misconduct, just as it is for regular tenant-based voucher tenants during the initial lease term and just as it is for the project-based voucher program.

Dated:  December 30, 2019                    Respectfully submitted,

*/s/ Rachel Garland*_____
Rachel Garland
George Gould
COMMUNITY LEGAL SERVICES, Inc.
1424 Chestnut Street
Philadelphia, PA 19102
Telephone: 215-981-3778
rgarland@clsphila.org
*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I, Rachel Garland, Esquire, certify that on December 30, 2019 I served through electronic case filing a true and correct copy of the foregoing Plaintiff's Reply to Defendant's Motion for Summary Judgment on Susanna Randazzo, Esquire, counsel of record for Defendant Philip E. Harvey.

<div style="margin-left: 40%;">

*/s/ Rachel Garland*
Rachel Garland
George Gould
COMMUNITY LEGAL SERVICES, Inc.
1424 Chestnut Street
Philadelphia, PA 19102
Telephone: 215-981-3778
rgarland@clsphila.org
*Attorneys for the Plaintiff*

</div>